May it please the Court, my name is Martin Crowley and I represent the plaintiff appellant Janelle Dietrich. I would like to reserve a couple of minutes at the end for rebuttal if I may. I recently learned that I've been advocating the wrong type of First Amendment freedoms down in Sparks. If I would represent their sidewalk painters selling art on the city of Sparks recently paid Mr. White, I should have actually filed some supplemental authorities to include that case, but I only learned on Sunday that it was a published opinion and that's this Court's opinion in White v. Sparks 05-15582 from last August. I bring that case up because to me it seems odd that the Nevada District Court would grant protection to the painter selling art on the city sidewalks in Sparks, but not to Janelle Dietrich, who's gathering signatures for a petition and registering people to vote. And I know I've said it in the briefs and the oppositions to the motions for summary judgment, but the First Amendment activity doesn't get any more fundamental than registering people to vote and gathering signatures for a petition. I think the district judge, at least this is what he said he believed, was that it didn't make any difference because she was transferred a block her way and she could still go ahead and do it. That's, of course, I'm not sure that's the law, but I'm not sure I understand the facts. As I understand it, the cook-off had a permit, and I suppose the permit indicated a certain area, a geographic area, where they could do their cook-off. It was unclear from the record whether the tables your client was trying to set up was within that geographical area or outside it. Does the record show that? I don't know if the record actually shows that, but we would stipulate that it would be within that area because it was on a public sidewalk on a corner that would be in the street region of where the permits were issued to the Nugget, and I believe Nugget's counsel could address that. And is it, do I understand correctly, the record shows that Officer Cardella, or... He was one of them. He threatened, according to the record, he threatened your client with arrest unless she moved a block away. Not only her, but several other people that were present gathering signatures. That's a fact. Okay. Does it matter whether or not the tables are within or without the permit area as you mentioned? It does not. To me, it does not. It's a public sidewalk, and I think the public sidewalk stays a public sidewalk no matter what occurs on that street. So even though they have a permit to use that property, that particular sidewalk, a person can set up any types of tables they want to? No, sir. I think if someone was down there trying to set up a booth like they have at the Sparks Rib Cook-Off and other events that they have there and sell their wares and things like that, then they should have to share in the fees or the permit for doing that. But First Amendment activity requires no permit, and I think that's the distinction. Is there any evidence that the location of the table initially caused any disruption or of the event that for which there was a permit, such as people not being able to get to the cook-off or similar things? I understand. And the evidence is actually to the contrary, that there was more than ample room for people to get by because it was a wide space where the corner was. It was very large, and the table was set back away from the curb, so there was 10 or 15, 20 feet for people to pass by freely if they wanted to. As I understand it, this is a fairly large area. There's a big public square with several streets all around it, and it's a rather large area. Is that a correct understanding? Yes. It runs for several blocks, this event. It covers several city blocks. Okay. Fundamental freedom is the First Amendment, registering people to vote. But as obvious as that sounds, then why then does Reno arrest petition gatherers at the city center bus depot, and the Sparks police run citizens off of its sidewalks who are not in anyone's way or causing any disturbance at all? Much of the facts in this case were misrepresented to the district court in the motions for summary judgment, and apparently accepted as true by the district court. And I believe this is what happens when summary judgment is granted without any hearing or argument. Since the plaintiff and her group were engaged in protected First Amendment activity, the state's agents and those who give them their marching orders have no right to interfere. They have the conduct of the defendants shocks the conscience and violates due process. Accepting plaintiff's testimony of what occurred as true, the Sparks Nugget defendants directed the police to interfere with plaintiff's First Amendment rights and to retaliate against her for daring to come back and for publicly embarrassing the defendants by the newspaper article that was printed on the day after their removal. This has to do with Officer Potter. Yes, sir. The argument is that there's nothing in the record that shows that Officer Potter saw the article so that the record doesn't show a retaliation because of that. What's your response to that? Well, and I would have to agree that there is no evidence that he saw the article. It was front page of the Sparks Tribune, and it happened on Friday. It was published on Friday. The first removal happened on Thursday night, and the article was on Friday. They didn't have any trouble with them on Friday, and then on Saturday afternoon or about noon is when this occurred. So if the lieutenant of the Sparks Police Department doesn't see the front page of the paper from the day before, I guess that is possible. But the fact that Ms. Malachow came out there and when she saw this woman and recognized her from Thursday night and started telling the police, give her a ticket, give her a that this was retribution for what had occurred because there was no permit required, and that was supposed to be the agreement between the parties. So you feel there's evidence to show that the private party was aware of the article because of her conduct, but there's nothing in Potter's conduct that's similar? No, that's true. And I guess it would have to be an implication that would be, or an inference, rather, that would be raised, and a jury would have to decide that. Well, it supports your implied argument, I believe, that Ms. Matchwell was a state actor. She's the one who was aware of the article. That's our position. Where's the evidence to support that? That she was aware of the article? A state actor. Well, is that she insisted that she acted as a private citizen when she insisted a state actor write the citation and give her a ticket? Then she becomes a state actor in that regard. That's just the position that we're taking. That's why we're here, I guess. The defendants argue that it's not a violation of the First Amendment to tell a citizen you can't gather signatures on Street A, but you can on Street B. But it is a violation. If the police can tell you to stay away from a public Street A, then they can limit you to your First Activity to Street Z, if they should so choose. Counsel, before your time expires, I want to ask you a question about the timeliness of the notice of appeal, because if the notice of appeal was not filed in a timely manner, then we won't be able to get to all these interesting questions. And as it appears to us, it appears that judgment was entered in favor of some of the defendants, Potter, Cardella, and the city on September 26, 2006, and judgment was entered in favor of the Nugget, Malcho, and Harvey on September 28, 2006. And it appears that the notice of appeal as to all of the defendants was filed by your client on October 30. And if those dates are correct, is that timely? Is that within the 30 days required? Well, I haven't addressed that issue or researched it since the time that we did it, but I believe the 30th probably was a Monday, and that if you look at the calendar, the 30th, they probably ran on the weekend from the notice of that, and I didn't recall that that was on the 26th. I thought it was the 27th. You're right. Well, there's a summary judgment, the 25th judgment, the 26th, and another summary judgment, the 27th, and another judgment, the 28th, so it all kind of happened over a four-day period there. And I think we took the position that hasn't been argued, but I think that there's a three-day electronic notice added to any notification that's served through electronically or by mail that would add three days to that time period in addition to that. And I'm just about out of time. I'd just like to maybe have a short reply after counsel speaks. Thank you, counsel. Good morning. May it please the Court. My name is Nicholas Fry, and I'm here to represent Sparks Nugget and its employees, Larry Harvey and Michelle Malchow. I'd like to address first. You don't represent the police officers? I do not. I'm going to share the time with counsel for the City of Sparks and the police officers. I'm going to take five minutes, if I may, of the time, which is limited. I'd like to address one of the first questions that was presented to Mr. Crowley. The Fourth Circuit Court of Appeals has held that the closure of city streets and walks to political or religious groups whose speech opposes that of permit holders is a legally acceptable and sound practice on both the state and federal level. What's the politics of the rib cook-off? Is the rib cook-off expressing a political viewpoint? No, it is not. Okay. But it's perfectly permissible for the city to give a license permit to an entity or a person. I don't think that's been challenged. I think that's correct, Your Honor. So this, as I see it, the case itself is down to the First Amendment issue, and that's a 1983 case. And in order to have a 1983 case, you have to show government action. That's your argument, I take it. The counsel says, in opposition to that, that there was a conspiracy between your client and the police officers. They conspired together. So that's how he gets to state action. So it seems to me the only issue you have to talk to us about is whether or not there's a sufficient record to show that there is this conspiracy or joint action between the private parties and the police department. Now, how would you argue that issue? I would argue that there is not a sufficient record to establish that type of conspiracy. Ms. Dietrich testified that although she believed the city of Sparks issued the arrest warrant at the insistence of Michelle Malchaud, she did not hear the exact conversation between Malchaud and the Sparks police, and that she was not paying attention really to everything that was said. And she said this. It's shown at pages 38 and 39 of the amended excerpts of record. So the case has been vastly overstated by Mr. Crowley here today. The evidence does not show that there was urging by Ms. Malchaud that an arrest warrant be issued. And, in fact, the municipal city court proceedings on that citation, Ms. Malchaud testified she did not request that an arrest be made. And the officer testified that he made the decision of his own free will, that he was not to be used. This was on summary judgment. Correct. And we take the evidence mostly in the favor of the plaintiff. That's correct. And if there is a substantial difference that's relevant, then summary judgment needs to be reversed. So it seems to me that your argument is, if I understand it correctly, that there's no real evidence of the connection, except in the area of Potter where counsel says that your client was out there yelling at him to give her a ticket. She has no permit. How do you respond to that? Well, the testimony has been that she was yelling to that effect. But, in fact, the officer testified that that was not the reason that he issued an arrest warrant. He said it was my choice and my choice alone, and I did it on my own free will. That was Potter citing her driving past the barricade. Gardella was the one on Thursday who told her to move on. I think you have two different situations. That is correct, Your Honor. There were two different circumstances. And the testimony earlier was that she was asked to move to another location. She was able to go forward there and continue to collect signatures on the petitions, she and her colleague. On Thursday she went home. She said there was nobody coming by the location to which Officer Gardella directed her. But the next day, on a Friday, I guess Mr. Harvey said, you can set up wherever you want as long as you don't obstruct the customers. And she set up somewhere which was satisfactory. That's correct. For the rest of the weekend. That's correct. The next two days she continued. And she testified she continued to collect signatures the first day for a period of time, although she was not satisfied with the volume of traffic through there. But she was allowed to continue collecting signatures. But this was a private event. And I believe that the fact that it was a private event, that the city had issued a proper permit to. It was a private event open to the public, correct? Anyone who wanted to attend the rib cook-off didn't have to buy a ticket. That's correct. They could just walk in. That's correct. What's your response to the question we asked counsel about whether this appeal is timely? The notice of appeal was filed 32 and 34 days after the entry of judgment by calendar count. I assume that you checked this out for jurisdiction. If it's late, we can't do anything about this case. I just looked at my calendar to look back. It looks like the 30th was a Monday, so I presume that's the reason. So I haven't looked at that specifically other than it appears. Do you recall if you did check it initially to make sure there was jurisdiction? I was not counsel originally, so I didn't check it, but I just checked it a moment ago. It appears that the 30th was a Monday, so I presume that it was timely. It appears, although I haven't independently made that determination in all candor. And I think I've used my full time. If I may turn the time to the counsel for the city. Thank you. Thank you so much for your time. Good morning. My name is Stan Brown, Jr. I'm appearing on behalf of the Sparks defendants. Appearing with me is Sparks City Attorney Chester H. Adams. Counsel, I have a question for you about a case that our court decided a couple of years ago and how you think that applies to this situation. The case is Gathright v. The City of Portland, which was decided in 2006. And in that case, there was a permit for a relatively large public space in Portland, my hometown, and this court held that the permittee could not simply exclude those who had First Amendment messages if they were not disruptive or even actually if they were disruptive to some extent. And in that case, the person had offensive to some people things to say. And why wouldn't that case apply to this situation where the permittee does not have an absolute right to exclude First Amendment expression where they are opening their event to the public? If indeed that case is right on point, although as I read the permitting process, the streets and the sidewalk in the area in question were indeed, in essence, privatized, if you will, under the Hurley decision. Well, I'm not sure if that completely is, well, first of all, I'm not sure that can be done for an event at which the public is otherwise invited, but I read the permit to say that the streets would be closed at Victorian and 11th, and the allegation in the petitioner's complaint and testimony, I think, is that she was at Victorian and 14th, which is a different corner, not closed under the permit. Correct. It would seem to me that even if she was exercising her First Amendment rights, that the city, that the nugget could exercise reasonable safety concerns, and that seems to be what the issue was at the first site that they set up at Victorian and 14th. On summary judgment, there is evidence from her side that there was no disruption or problem of any kind that people could still pass on the sidewalk, even though there was a table there, because it was a wide sidewalk, and that there was no disruption. And if that's the case, on summary judgment, why are you entitled to summary judgment? The court was merely asked to summon, and the record is summoned to remove her to another area where she was indeed allowed to continue her First Amendment rights. But if she had a right to be where she was, then there was no right to move her. If indeed she did. But I interpret the Hurley decision as saying that, indeed, perhaps she did not have that right. I'm not sure that the Gelbreath decision is right on the court. But the basis of the court's decision, in my judgment, is somewhat questionable. Yes. The court, the district court, says the court is at a loss to understand how plaintiff's First Amendment rights were interfered, were infringed, when she clearly was able to continue her free speech activities, albeit at a slightly different location. Correct. What he's saying is, if I understand it, the police can come in and roust anybody out with a threat of arrest, as long as you don't move them so far that they can't continue to exercise their First Amendment rights. That's not my understanding of the law. Is that yours? Well, my understanding of the law in this particular case was that the officer was summoned by the Nugget, and it's not clear from the record exactly what it was that motivated Michelle Malshaw to summon Officer Potter to have her removed. Or Officer Cardella, excuse me. Officer Cardella was there.  Officer Cardella threatened, according to the record, arrest unless she moved, and then made her move from this place. Seems to me that's a, I don't know of a case that I can recall that that wouldn't be a violation of the First Amendment. Well, Your Honor, I just, under the record that I read it, and reading Judge Sandoval's well-reasoned opinion, it seemed to me that if there was any infringement at all, it was rather minor, if at all. She wasn't entitled to still continue. Well, minor doesn't mean it isn't a violation of the Constitution. We don't have minor constitutional violations. We have constitutional violations. Well. If the district judge had gone ahead and talked about immunity, maybe there would be a stronger case here. But he says, however, concluding the officers, Potter and Canderella, committed no constitutional violations, the court need not consider qualified immunity applies. Correct. I'm at a loss on this one. I'm sorry. Okay. What's your best case to show that this is just a minor interruption and therefore not a violation of the First Amendment? Yes. She was relocated to an area less than a block away, and it was near the end of the evening. She spent less than 20 minutes there and went home. She testified unequivocally in her deposition, and the admissions in her complaint also indicate that the rest of the balance of the event, she was able to continue her First Amendment activities in the very location that she chose. What is it that says that so long as she can continue her activity, there's no violation of the First Amendment for the police officer making her move under threat of arrest? Well, again, Judge Sandoval felt that the minimal intrusion was de minimis, if you will, that she was still allowed to continue her First Amendment rights. I understand the district judge felt that way, but have you found a case anywhere in our circuit, anywhere in the United States, that could substantiate that as a rule of law? I have not. I haven't either. There are some evidence that she was not only moved by Cardello, but she was then detained for a period of time at the new location? At the new location, she was not detained. She was never arrested. There was no detention. No detention? No, Your Honor. She was issued a citation for entering a road-closed area of violation. That's two days later. I'm talking about the first day, Thursday. I think she testified that she was moved to a location in the Eastern Oil Mine. She wasn't free to leave, but she had to hang around until the officer decided whether he was going to set her or not. Maybe I'm wrong. Maybe I'm misreading the record. I didn't read the record as that. I read the record as that Officer Cardello escorted her to the location that was approximately a block, a block and a half away. She was left there to continue to ---- Maybe the period of escort was the detention. That process of being controlled by the officer and directed to a location. She made the claim that that was the detention. I didn't read in the record that she claimed that she was detained. I read the record as saying that she was relocated and that she thereafter continued her activities. Thank you. Thank you, counsel. Mr. Crowley, you have hardly any time, but we'll give you a minute for rebuttal since a lot of issues have been raised. And I'll be really brief. Other counsel went over time, so. And I'll be really brief. If the record doesn't reflect it, I believe Ms. Dietrich testified that she received no further signatures after she was moved to the alternate location that the district court found adequate, that she got no more signatures at all at that new location. What difference would that make? Well, we just want to make sure the record's clear. You know, they're alleging that she was continued to work and the court found that she was able to keep gathering signatures, and he's wrong. I understand. But suppose she got 20 times more signatures at the new place. She still shouldn't be moved from where she wants to stand. That's her freedom. It's her right. But let's also be clear, because the district court got this part wrong. They didn't move her on Thursday night, and then she stayed there for the rest of the weekend. They moved them on Thursday night under threat of arrest. Then on Friday they came back to their original locations and stayed there for Friday, Saturday, and Sunday. And on Saturday she got the ticket when she came in. They didn't do anything on Friday. It was on Saturday that she got the ticket, but they stayed in the same locations for the rest of the weekend. And just on the issue of the conspiracy, almost no conspiracy is ever set forth in clear terms or words. It's the actions of the parties that speak, whether they're acting in concert to deprive somebody of their rights. And that's all I have. Thank you, counsel. Thank you. The case just argued is submitted. And just for planning purposes, after the next case we'll take a short break in between cases. So our next case on the docket this morning is Chambers v. McDaniel.
judges: Wallace, Graber, Timlin